```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DESHONDA R. GOODE,

                    Plaintiff,

      -against-                        MEMORANDUM & ORDER
                                       12-CV-3982(JS)(AKT)
PATRICK R. DONAHUE, Postmaster
General, United States Postal
Service,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Stewart Lee Karlin
                    The Law Offices of Stewart
                      Lee Karlin, P.C.
                    9 Murray Street, Suite 4W
                    New York, NY 10007

For Defendant:      Robert W. Schumacher, II, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, NY 11722
```

SEYBERT, District Judge:

Plaintiff Deshonda Goode ("Plaintiff"), a former letter carrier for the United States Postal Service (the "USPS"), originally commenced this action pro se on August 9, 2012 against defendant Patrick R. Donahue, the Postmaster General of the United States Postal Service ("Defendant"), asserting claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Plaintiff has since retained counsel. Currently pending before the Court is Defendant's

motion for summary judgment. (Docket Entry 49.) For the following reasons, Defendant's motion is DENIED.

BACKGROUND[1]

Plaintiff is a forty-nine-year-old, African-American female. (Goode Decl., Docket Entry 65, ¶ 2.) This action arises out of her employment and subsequent termination as a letter carrier for the USPS. She was first hired on March 24, 2001 and worked at the post office in Hempstead, New York (the "Hempstead Post Office") until her termination in June 2009.[2] (Def.'s 56.1 Stmt., Docket Entry 51, ¶¶ 1, 3, 24.) In this action, Defendant maintains that the USPS terminated Plaintiff because of her poor attendance record and inability to work in a safe manner. Plaintiff disputes this, claiming that the postmaster of the Hempstead Post Office, Kevin Rynne ("Rynne"), discriminated against her on the basis of race and fabricated disciplinary charges in retaliation for Plaintiff having filed an administrative complaint against him alleging discrimination in November 2006.

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and their evidence in support. Any factual disputes will be noted.

[2] Plaintiff's first assignment was at the post office in East Meadow, New York for a ninety-day probationary, but she was transferred to the Hempstead Post Office after she passed her probationary period. (Goode Dep. Tr., Docket Entry 55, Ex. A at 24:7-12.)

2

Between 2001 and 2006, Plaintiff worked at the Hempstead Post Office with no disciplinary history. However, according to USPS employment records, during this time, she was involved in a motor vehicle accident and three "industrial accidents" that resulted in injuries. (See Def.'s 56.1 Stmt. ¶ 11; DeRosa Decl., Docket Entry 52, at 2[3].) The USPS records state that Plaintiff was injured on April 12, 2001, December 21, 2001, and December 14, 2002. (See DeRosa Decl. Ex. A at 2.) The "cause of injury" for each incident states "Slip, Twist, Trip, No Falling," "Other Manual Handling and Equipment," and Fall/Slip On Stairway, Steps," respectively. (DeRosa Decl. Ex. A at 2.) Plaintiff denies that she was involved in any accidents on April 12th or December 14, 2002, but does admit that she broke her finger and sprained her wrist by lifting a heavy box on December 21, 2001. (See Goode Decl. ¶ 30.) Plaintiff also admits that she was involved in a motor vehicle accident on February 24, 2006, but she maintains that she was rear ended while sitting at a red light. (Pl.'s 56.1 Counterstmt. ¶ 11.) In any event, it is undisputed that Plaintiff never had any disciplinary issues between 2001 and 2006, although she did receive additional driver training in

---

[3] Page numbers of declarations and exhibits referenced herein, refer to the page numbers supplied by the Electronic Case Filing system.

April 2006 as a result of the February 2006 motor vehicle accident. (Def.'s 56.1 Stmt. ¶ 12.)

Rynne became the postmaster of the Hempstead Post Office sometime in 2005. (Def.'s 56.1 Stmt. ¶ 5.) Prior to and after Rynne became postmaster, Tom McGuiness ("McGuines") was Plaintiff's direct supervisor and he reported directly to Rynne. (Def.'s 56.1 Stmt. ¶ 6.) On June 21, 2005, Plaintiff filed the first of two pre-complaints against Rynne with an Equal Opportunity Employment ("EEO") counselor.[4] (Cedeno Decl., Docket Entry 54, Ex. B at 18-20.) During her deposition, Plaintiff testified that she filed this complaint alleging harassment because Rynne allegedly was "[c]oming to [her] work station every day, stuffing [her] case with books so [she] couldn't

---

[4] Plaintiff also filed pre-complaints with an EEO counselor in 2003 and 2004, which do not appear to be related to the allegations in this action. Plaintiff filed her first pre-complaint on February 4, 2003. According to USPS employment records, Plaintiff alleged discrimination on the basis of "race," "reprisal," "sex," and "disability," and later withdrew the pre-complaint on July 1, 2003. (Cedeno Decl. Ex. B at 13-14.) The records do not specify against whom the pre-complaint was filed, nor could Plaintiff remember any of the details of this EEO activity during her deposition. (Goode Dep. Tr., Docket Entry 55, 71-74.) Plaintiff again filed a pre-complaint on December 1, 2004. The USPS records indicate that Plaintiff redressed the alleged discrimination on the basis of "race," "reprisal," "sex," and "disability" with respect to "duty hours" and "other assignment of duties," and that she later withdrew this pre-complaint on February 15, 2015. (Cedeno Decl. Ex. B at 16.) However, again, the USPS records do not indicate who engaged in the alleged discriminatory conduct, and Plaintiff could not remember the details of this EEO activity during her deposition either. (Goode Dep. Tr. 69-71.)

4

carry them" and was doing "anything he could do to make [her] day horrible." (Goode Dep. Tr. 67:19-22.)  According to USPS employment records, Plaintiff withdrew this complaint on July 21, 2015 prior to mediation.  (Cedeno Decl. Ex. B at 19.)

Plaintiff filed the second pre-complaint against Rynne on November 7, 2006.  (Cedeno Decl. Ex. B at 22-23.)  During her deposition, Plaintiff testified that she filed this complaint because Rynne was again harassing her.  Specifically, she stated that: "Mr. Rynne was harassing me that day.  He was in my face calling me names, throwing my mail around.  He was just in my face since the time I punched in at 8:00 in the morning until I was taken out in an ambulance." (Goode Dep. Tr. 61:17-21.)  On December 21, 2006, Plaintiff's pre-complaint was settled after mediation.  (<u>See</u> Cedeno Decl. Ex. D at 27-28.)  Both Rynne and Plaintiff signed a "Settlement Form Agreement" that stated that "[t]he parties agree[d] to treat each other with dignity, mutual respect, and professionalism, both in the substance and style of their interactions and communications" and that they "enter[ed] into th[e] agreement as a direct result of the discussion that took place in the mediation sessions." (Cedeno Decl. Ex. D at 1745.)

However, Plaintiff alleges that Rynne "became mad due to the EEO complaint," (Pl.'s 56.1 Counterstmt. ¶ 52), and continued "discriminating against [her] and harassing [her]" and

5

"further retaliated against [her]" as a result of the complaint, (Goode Decl. ¶ 14). For example, during her deposition, Plaintiff testified that Rynne starting making "smart comments" to her "every other day," including calling her a "lazy black bitch" and saying that her hair was "nappy." (Goode Dep. Tr. 63:4-65:2.) In a court-ordered interrogatory response, Plaintiff alleged that on November 7, 2007, Rynne told her to "[g]et [her] black ass back to work" and "was saying [her] black [was] lazy, [that she] d[id] not come back on time, [and that she was a] stupid ass." (Schumacher Supp. Decl., Docket Entry 56 at 7.) Plaintiff also contends that after the 2006 EEO complaint was resolved, "Rynne started following [her] on [her] route every single day" in order to "form[ ] a paper trail," and that "[t]his was not something that [ ] happened to other carriers." (Goode Decl. ¶ 15.)

Then, between November 28, 2007 and February 26, 2009, Plaintiff received seven separate disciplinary notices and/or suspensions for alleged constant tardiness and violations of post office safety rules. (See Rynne Decl., Docket Entry 53, Exs. A-G.) On June 9, 2009, Rynne and McGuiness conducted street observations of Plaintiff, (Def.'s 56.1 Stmt. ¶ 21), during which Rynne claims that he observed Plaintiff improperly make a U-turn and drive through an intersection with her side door open while she was not wearing her seatbelt, (Rynne Decl.

6

¶ 18). A pre-disciplinary hearing was held on June 10, 2009, and Plaintiff was later issued a Notice of Removal ("NOR") on June 24, 2009, charging her with several violations of the post office's rules related to the June 9th incident and listing her prior violations (the "June 24th NOR"). (Rynne Decl. Ex. I.)

On November 24, 2009, Plaintiff filed a formal EEO complaint alleging discrimination based on race and retaliation related to the June 24th NOR. (Def.'s 56.1 Stmt. ¶¶ 33-34.) On October 28, 2010, an EEOC Administrative Law Judge issued a decision without a hearing, finding for the USPS, and holding that Plaintiff could not meet her burden of showing that she was discriminated against. (Def.'s 56.1 Stmt. ¶ 35.) On August 9, 2012, Plaintiff filed this action against Defendant, asserting claims of racial discrimination and retaliation in violation of Title VII. Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry 49.) This motion is fully briefed and currently pending before the Court.

DISCUSSION

I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex

7

Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

## II. McDonnell Douglas Burden-Shifting Framework

Claims for racial discrimination or retaliation under Title VII are analyzed using the burden-shifting framework articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010). That framework requires a plaintiff to first establish a prima facie case, after which the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). Once the defendant provides such a reason, the burden shifts back to the plaintiff to present competent evidence that the reasons offered by the defendants were not the true reasons, but were a pretext for discrimination or retaliation. Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 117 (2d Cir. 2010); Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and citations omitted), superseded on other grounds by N.Y.C. Local L. No. 85. With this framework in mind, the Court turns to Defendant's motion for summary judgment on each of Plaintiff's claims.

## III. Defendant's Motion

Defendant moves for summary judgment on Plaintiff's claims, arguing that Plaintiff can neither establish her prima

9

facie case nor prove that Defendant's stated reason for terminating her employment was a pretext for unlawful discrimination or retaliation under the standards governing claims brought pursuant to Title VII.

A. Racial Discrimination Under Title VII

"Title VII prohibits discrimination against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of, inter alia, such individual's sex." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010) (internal quotation marks, ellipsis, and brackets omitted) (quoting 42 U.S.C. § 2000-2(a)(1)). As previously noted, to survive summary judgment, Plaintiff first must establish a prima facie case of discrimination. To do so, Plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Ruiz v. Cnty. of Rockland, 609 F.3d 486, 492 (2d Cir. 2010) (citation omitted). "'Although plaintiff's burden at the prima facie stage is minimal, she must provide some competent evidence that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" Ellis v. Century 21 Dep't Stores, 975 F. Supp. 2d 244, 266 (E.D.N.Y. 2013) (brackets omitted) (quoting Dent v.

U.S. Tennis Ass'n, No. 08-CV-1533, 2011 WL 308417, at *4 (E.D.N.Y. Jan. 27, 2011)).

The first three elements of Plaintiff's prima facie case are not in dispute. Plaintiff clearly is a member of a protected class, she suffered an adverse employment action when she was terminated, and Defendant does not argue that she was not qualified to be a letter carrier. However, Defendant argues that summary judgment should be granted on Plaintiff's racial discrimination claim because she has not established the fourth element of her prima facie case--that is, that her termination took place under circumstances giving rise to an inference of discrimination. (Def.'s Br., Docket Entry 58, at 14-16.) The Court disagrees.

An inference of discrimination "can be established in a variety of ways depending on the specific facts of the case." White v. Andy Frain Servs., Inc., No. 12-CV-5868, 2014 WL 3896066, at *6 (E.D.N.Y. Aug. 8, 2014) (citing Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001); Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)). A Title VII plaintiff may be able to establish an inference of discrimination by presenting evidence that demonstrates: (1) "'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus,'" id. (quoting Chertkova, 92 F.3d at 91); (2) that she was

11

"treated differently from other similarly situated employees," id. (citing Abdu-Brisson, 239 F.3d at 468); or (3) that she "was replaced by someone outside [her] protected class," Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) (citations omitted). However, the plaintiff "'must point to facts that suggest' that the adverse action was motivated, at least in part, by discriminatory animus." Kamrowski v. Morrison Mgmt. Specialist, No. 05-CV-9234, 2010 WL 3932354, at *13 (S.D.N.Y. Sept. 29, 2010) (quoting Kalsi v. N.Y. City Transit Auth., 62 F. Supp. 2d 745, 753 (E.D.N.Y. 1998), aff'd, 189 F.3d 461 (2d Cir. 1999)).

Here, Plaintiff contends that an inference of discrimination may be drawn because (1) Rynne made remarks to her that could be viewed as reflecting a discriminatory animus, and (2) several Caucasian mail carriers violated post office rules or had motor vehicle accidents, but were not disciplined as Plaintiff was. (See Pl.'s Opp. Br., Docket Entry 63, at 3-8.) As explained below, Plaintiff has established a prima facie case of discrimination based on Rynne's alleged racial remarks, but not based on disparate treatment. The Court will first address Plaintiff's claim of disparate treatment.

"A showing of disparate treatment--that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside [her] protected group'--is a

12

recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." Ruiz, 609 F.3d at 493 (quoting Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)). Here, Plaintiff has failed to establish a prima facie case of disparate treatment. In support, Plaintiff submits a conclusory declaration stating that at least six of her fellow letter carriers violated post office safety rules or had motor vehicles accidents and were not punished as she was. (Goode Decl. ¶¶ 21-24.) Plaintiff does not identify how she has any personal knowledge that these incidents occurred, she submits no testimony from these letter carriers, and she also has failed to submit any evidence regarding their prior disciplinary history. In contrast, Defendant has produced documentary evidence demonstrating that the Hempstead Post Office did in fact discipline letter carriers of all races. (See Rynne Decl. Ex. J.) Accordingly, the Court finds that Plaintiff has not met her prima facie burden in this regard. See Holcomb, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

Nonetheless, Plaintiff has established a prima facie case of discrimination based on her testimony that Rynne made remarks to her that could be viewed as reflecting a discriminatory animus. Specifically, during her deposition,

13

Plaintiff testified that after she and Rynne settled her 2006 EEO pre-complaint against him, he starting making "smart comments" to her "every other day," including calling her a "lazy black bitch" and saying that her hair was "nappy." (Goode Dep. Tr. 63:4-65:2.) In a court-ordered interrogatory response, Plaintiff alleged that on November 7, 2007, Rynne told her to "[g]et [her] black ass back to work" and "was saying [her] black ass [was] lazy, [that she] d[id] not come back on time, [and that she was a] stupid ass." (Schumacher Supp. Decl., Ex. A. at 7.) Defendant has not submitted any evidence rebutting Plaintiff's testimony. Rather, Defendant argues that because Plaintiff's prior interrogatory response indicated only one occasion of an alleged discriminatory remark, she should be bound to this one instance, which would be insufficient standing alone to establish a prima facie case of discrimination. (Def.'s Reply Br., Docket Entry 67, at 4.) Defendant contends that the declaration she has submitted in opposition to Defendants' summary judgment motion is only "an effort to manufacture issues of fact to survive summary judgment" by including new allegations that Rynne called her "derogatory names due to [her] race." (Def.'s Reply Br. at 4 (alteration in original).) The Court disagrees. As noted, Plaintiff testified during her deposition that Rynne repeatedly made derogatory comments to her, including calling her a "lazy black bitch," and

14

it is well settled that "'[a]n inference of discrimination may be drawn by a showing that the employer criticized the plaintiff's performance in ethnically degrading terms . . . .'" Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (alteration in original) (quoting Hunter v. St. Francis Hosp., 281 F. Supp. 2d 534, 542 (E.D.N.Y. 2003); see also Kaur v. N.Y. City Health & Hospitals Corp., 688 F. Supp. 2d 317, 333 (S.D.N.Y. 2010) ("[W]here decision-makers 'repeatedly make comments that draw a direct link between a plaintiff's membership in a protected class and an adverse employment action' can an inference of discriminatory animus be drawn." (quoting Costantin v. N.Y. City Fire Dep't, No. 06-CV-4631, 2009 WL 3053851, at *15 (S.D.N.Y. Sep. 22, 2009)). Accordingly, Plaintiff has establish a prima facie case of discrimination because there is evidence in the record that Rynne made derogatory remarks to Plaintiff that were directly related to her job performance.

In sum, Plaintiff has establish a prima facie case of discrimination based on Rynne's allege derogatory remarks, but she has failed to produce sufficient evidence that she was treated differently than similarly situated employees. The Court will now turn to Plaintiff's prima facie case of retaliation under Title VII.

B. <u>Retaliation Under Title VII</u>

Title VII prohibits an employer from retaliating against an employee because she has engaged in protected activity, namely, "oppos[ing] any practice made an unlawful employment practice [under Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To meet the initial burden of establishing a prima facie case of retaliation under Title VII, Plaintiff must show that: "(1) [she] was engaged in protected activity; (2) the employer was aware of that activity; (3) [she] suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." See <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation omitted).

Plaintiff has met her initial burden of establishing a prima facie case of retaliation. The first three elements are not in dispute. Defendant argues that Plaintiff has failed to set forth evidence establishing the fourth element of her prima facie case--namely, that there was a causal connection between the protected activity and her termination. (Def.'s Br. at 16-18.) Defendant specifically argues that an inference of retaliation cannot arise because there is no temporal proximity between the EEO pre-complaint Plaintiff filed in 2006 and her

16

termination in 2009. (Def.'s Br. at 17-18.) The Court disagrees.

It is true that "[i]n order for a court to 'accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case,' the temporal proximity must be 'very close.'" Varno v. Jefferson Cnty. Dep't of Planning, No. 11-CV-0803, 2015 WL 5602965, at *8 (N.D.N.Y. Sept. 23, 2015) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001)). However, "temporal proximity itself is not necessary to survive summary judgment." Curcio v. Roosevelt Union Free Sch. Dist., No. 10-CV-5612, 2012 WL 3646935, at *14 (E.D.N.Y. Aug. 22, 2012) (collecting cases). "[A] plaintiff may also demonstrate the causal connection by showing a 'pattern of antagonism' over the intervening period" between the protected activity and the alleged retaliatory act. Id. (quoting Chan v. NYU Downtown Hosp., No. 03-CV-3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 3, 2004)).

Here, according to Plaintiff, after she filed her 2006 pre-complaint against Rynne, he began following her on her route every day in order to the lay the foundation for her termination in retaliation for the 2006 complaint. (Goode Decl. ¶ 15.) Defendant dismisses this allegation as uncorroborated by

supporting evidence. However, there is evidence that Plaintiff's disciplinary changed drastically after she filed the 2006 complaint. Between 2001 and 2006, Plaintiff worked at the Hempstead Post Office with virtually no disciplinary history. Although she was involved in a motor vehicle accident on February 24, 2006 (prior to the 2006 complaint), for which she received additional driving training, Plaintiff maintains that she was rear ended while sitting at a red light. (Pl.'s 56.1 Counterstmt. ¶ 11.) Reviewing the evidence in the light most favorable to Plaintiff, the Court finds that there are triable issues of fact with respect to the presence of a causal link between her 2006 complaint and her subsequent termination in 2009.

C. Legitimate, Non-Discriminatory Reasons and Pretext

Defendant next asserts that it is entitled to summary judgment on Plaintiff's Title VII claims of discrimination and retaliation because it has come forward with legitimate, non-discriminatory reasons for its actions that Plaintiff cannot show are pretextual. The Court disagrees. Specifically, Defendant asserts that it had a legitimate, non-discriminatory reason for terminating Plaintiff because she was constantly late to work and violated numerous post office rules regarding safety. After careful analysis of the record, however, the Court finds that a rational factfinder could conclude that

18

Plaintiff's termination arose from intentional discrimination based on her allegations that Rynne made racially insensitive remarks regarding Plaintiff's job performance and the sharp increase in disciplinary actions following Plaintiff's EEO pre-complaint against Rynne. Accordingly, Defendant's motion for summary judgment is DENIED.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket Entry 50) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   November __2__, 2015
         Central Islip, New York